UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CHERYL LANDEROS,

        Plaintiff,

v.

WALMART, INC., A FOREIGN CORPORATION,

        Defendant.

Case No. 3:21-cv-00641-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Cheryl Landeros has brought this suit against defendant Walmart, Inc., in which she asserts a single claim of negligence arising from injuries she allegedly suffered after slipping on liquid on the floor of one of defendant's stores. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

    Defendant has filed a Motion for Summary Judgment. ECF 15. After holding a hearing on the motion and considering the briefing and arguments of the parties, the court denies the motion for the reasons discussed below.

## I.   Summary Judgment Standard

    Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citing FED. RULE. CIV. P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id*. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id*. at 248-49. The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000) (citation omitted).

**II.    Oregon Law Regarding Premises Liability for Substances on Floor**

In a diversity action such as this, state substantive law governs plaintiff's negligence claim. *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) ("[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law . . . which reflects a substantial policy of the state, should be followed."). Under Oregon law, "[l]ike all other occupants having control of

real property to which the public is invited, storekeepers are bound to use ordinary care to keep their premises in a reasonably safe condition for the use of such invitees and to see that the premises are free from hidden or lurking danger." *Starberg v. Olbekson*, 169 Or. 369, 373 (1942). "Their liability, however, is not that of an insurer against accidents upon the premises even as to persons whom they have invited to enter." *Id.* "Their liability to their invitees for injuries not intentionally inflicted, they not being insurers, must be predicated upon negligence and no presumption of negligence on the part of an owner or occupant arises merely upon a showing that an injury has been sustained by one rightfully upon the premises." *Id.* at 373-74.

Thus, "foreign substances on floors are not, as a matter of law, unreasonably dangerous." *Moorehead v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 273 Or. App. 54, 70–71 (2015); *see also Gardner v. Regal Fruit Co.*, 147 Or. 55, 58 (1934) ("To hold defendant liable in damages merely because some person without its knowledge had dropped a banana peeling or piece of other fruit on the walk, from which injury immediately occurred, would indeed be a harsh and unjust rule."). "[P]remises owners are only required to keep their floors in a reasonably safe condition." *Moorehead*, 273 Or. App. at 71.

> The general principle . . . is to the effect: That it is the duty of one who conducts a business in a building, to which the public is invited, to maintain such building in a reasonable condition of safety. This duty extends to keeping the floor ordinarily safe to walk upon. If, through some unforeseen cause, a hazardous condition is created, the landlord should have a reasonable time after notice, actual or constructive, of the defect, in which to correct it.

*Lopp v. First Nat. Bank*, 151 Or. 634, 638–39 (1935). Otherwise stated, "liability will not attach unless the owner had actual or constructive knowledge of the foreign substance and failed to use reasonable care to remove it." *Moorehead*, 273 Or. App. at 68. "[W]hether the owner had knowledge of the foreign substance is 'significant' because the foundation of liability . . . is knowledge—or what is deemed in law to be the same thing; opportunity by the exercise of

3 – OPINION AND ORDER

reasonable diligence to acquire knowledge—of the peril which subsequently results in injury." *Id*. at 69 (simplified). "The requirement that an invitee establish that the owner had actual or constructive knowledge of the substance is consistent with general principles of premises liability law, which provide that an owner's duty to an invitee extends only to 'dangers of which he knows or in the exercise of reasonable care should have known.'" *Id.*

A "three-part test for the owner's knowledge . . . was developed through a series of cases in which the issue on appeal was whether the plaintiff had presented sufficient evidence of the defendant's knowledge of the foreign substance—which, as explained above, is a requirement for recovery in a foreign substance case":

> (1) That the substance was placed there by the occupant, or
> (2) That the occupant knew that the substance was there and failed to use reasonable diligence to remove it, or
> (3) That the foreign substance had been there for such a length of time that the occupant should, by the exercise of reasonable diligence, have discovered and removed it.

*Id*. at 69-70. These theories of recovery are next discussed in the context of defendant's motion for summary judgment.

### III. Discussion

The parties do not dispute there is no evidence to support the first theory of recovery—whether defendant placed the liquid on the floor. With respect to the third theory of recovery, plaintiff argues it is "evident from the appearance of the liquid it had been there for some time." Opp. 1.

Courts have recognized that "[i]n some cases, a plaintiff can survive summary judgment if a jury could reasonably infer from the condition of the substance that it had been on the ground for some time." *Conrad v. Jackson Cty.*, No. 1:13-CV-00756-CL, 2014 WL 5040316, at *5 (D. Or. Oct. 8, 2014). For instance, in *Zumbusch v. Wal-Mart Stores, Inc.*, a case involving small

puddles of liquid that appeared to be "clear water," the plaintiff "offered testimony sufficient to create the reasonable inference that the substance in which she slipped had been on the floor long enough to begin to dry: 'Each small puddle appeared to be encircled by sandy dirt that had dried around the edges of each puddle.'" 940 F. Supp. 2d 1308, 1315–16 (D. Or. 2013). In *Audas v. Montgomery Ward, Inc.*, there was evidence the substance at issue—either melted ice cream, a chocolate milkshake, or an Orange Julius—had crusted over and begun to dry, from which the jury could infer it had been on the floor more than a short time. 79 Or. App. 718, 720-21 (1986); *see also Smith v. Wal–Mart Stores, Inc.,* 6 S.W.3d 829 (Ky. 1999) (finding that the condition of blue liquid from a slushy drink normally found in a semi-frozen state was enough to create a reasonable inference that it had remained on floor long enough for ice to melt).

      In other cases, however, Oregon courts have found the evidence constituted no more than mere conjecture or speculation regarding the length of time the substance had been on the floor. *See Dubry v. Safeway Stores, Inc.*, 70 Or. App. 183, 189 (1984) ("[E]ven assuming the leaves were at one time moist, there is no basis other than conjecture to conclude they were moist when they first were on the floor and remained there while becoming dry. Without some evidence as to their previous character and location or evidence of how they may have arrived at their location, there is an insufficient basis to infer they were on the floor for any length of time."); *Morrison v. Pac. Nw. Pub. Serv. Co.*, 146 Or. 225, 245 (1934) ("The plum on which plaintiff slipped might have been dropped by another passenger a moment before Morrison stepped on it. . . . There was nothing about the appearance of the crushed plum to indicate that it had been on the floor any considerable length of time.").

Here, plaintiff relies on the following evidence to argue that the spill had been on the floor for such a length of time that defendant should, by the exercise of reasonable diligence, have discovered and removed it:

1) Plaintiff testified at her deposition that the liquid was "like a watery substance with like a darker color to it . . . like dirty water almost," it was a "brown kind of a color," and it "could have been . . . like a muddy kind of water, like maybe a watered-down soda," Landeros Dep. 37:7-16;

2) There was formerly a McDonald's restaurant in the store, Culbert Dep. 23:6-7;

3) There were spills in the store from McDonald's customers carrying cups of soda, *id.*, 24:2-4; and

4) There were less spills after McDonald's ceased its operations in the store, *id*.

Plaintiff also proffers evidence regarding the size and amount of the liquid involved. Plaintiff testified that, after she landed on her hip, her pants were wet in the area of her "butt-cheek" and "on the side of [her] pants to the back," Landeros Dep. 38:14-23, and the remaining liquid on the floor was a about one foot long and six inches wide.[1]  *Id.* 40:24-41:6.  An employee used five absorbent pads to clean up the spill.  Culbert Dep. 21:5-7.  A "typical spill" requires only one or two towels, *id.* at 22:4-7, and each pad is capable of soaking up 12 ounces of liquid. *Id.* at 22:16-23.  Additionally, it was the "normal practice" of defendant's employees to "look out for spills," *id.* at 23:22-24:1, and store employees were supposed to "[p]ay attention to the floor" and clean up or pick up anything they saw.  *Id.* at 42:17-43:3.

---

[1] The store employee who had been assisting plaintiff took no photos of the spill before the pads were applied, although store protocol was to take photos of the spill.  Culbert Dep. 38:13-41:23.

6 – OPINION AND ORDER

Finally, the aisle where the incident occurred, which is called "Action Alley," appears to be a double-wide aisle with displays of stacked merchandise spaced at intervals down the middle. Meyer Decl., Ex. 1, ECF 24. The spill was located in the middle of the aisle floor, which is comprised of white tile, and the aisle was not crowded at the time of the incident. *Id.* From photographic stills of video footage, it appears that plaintiff and the employee who was assisting plaintiff were alone as they walked past several merchandise displays between 5:53:07 and 5:53:27 p.m. and were the only ones in the immediate vicinity of the spill at the time plaintiff fell at approximately 5:53:29 p.m. *Id.* The photographic stills also show the employee walking directly in front of plaintiff as he was leading her down the aisle, before she slipped and fell. *Id.*

Plaintiff argues "[a] reasonable inference from the evidence is that the substance on the floor was soda from a McDonald's cup, which . . . had been on the floor long enough for the ice to melt, and for defendant to have had an opportunity to discovery it." Opp. 10. But the only evidence regarding the nature of the substance is plaintiff's testimony that it was "like a muddy kind of water, like *maybe* a watered-down soda." Landeros Dep. 37:14-16 (emphasis added). The term "maybe" indicates guesswork, which is insufficient to survive a motion for summary judgment. *Brand v. Comcast Corp.*, 135 F. Supp. 3d 713, 742 (N.D. Ill. 2015) (observing the terms "maybe" or "probably" suggests guesswork, warranting summary judgment).

Moreover, even assuming the substance was watered-down soda, there is no evidence there was ice in it when it was spilled on the floor. To conclude that the substance on the floor was once soda with ice in it goes beyond a reasonable inference and into the realm of

7 – OPINION AND ORDER

speculation.[2] *Poppell v. City of San Diego*, 149 F.3d 951, 954 (9th Cir. 1998) (recognizing that "mere speculation, intuition or guessing" are insufficient to establish a reasonable inference); *Taylor v. Thrifty Payless, Inc.*, 742 F. App'x 275, 276 (9th Cir. 2018) (unpublished) (finding district court properly granted summary judgment under Oregon law because "there was insufficient evidence from which a jury could conclude how long the puddle of liquid was on the store floor *before* the fall and whether Thrifty knew or should have known of its presence" and the plaintiff "based nearly her whole argument on speculation and conjecture") (emphasis in original); *Laygui v. Wal-Mart Stores, Inc.*, No. 6:13-CV-00327-AA, 2014 WL 3695536, at *3 (D. Or. July 24, 2014) ("Without evidence of when the spill occurred, it is equally as probable that the [liquid] leaked immediately before plaintiff's fall as it was that the spill occurred two hours prior."). Thus, to the extent plaintiff's theory of recovery relies on the size and nature of the spill alone, her claim cannot defeat a motion for summary judgment.

Plaintiff argues that, in addition to the size and nature of the spill, defendant had constructive knowledge because its employee, who had been trained to conduct safety sweeps of

---

[2] Plaintiff does not argue that the lack of carbonation is evidence of how long the substance had been on the floor. At least one court has rejected such an argument. *Craig v. Franklin Mills Assocs., L.P.*, 555 F. Supp. 2d 547, 551 (E.D. Pa. 2008), *aff'd sub nom. Craig v. Mills Corp.*, 350 F. App'x 714 (3d Cir. 2009) (holding "the evidence offered by Plaintiffs—the thinning of the soda, the trail of soda, and the loss of carbonation—does not suggest that the spill had existed for any particular duration of time, let alone a duration of time sufficient to put Defendants on notice that a hazard existed").

In that decision, the court also rejected the argument that the thinning of soda, in and of itself, is evidence of duration of time. 555 F. Supp. 2d at 551-52 ("The thinning of the spilled soda . . . is not evidence of the duration of the spill. It is equally likely that the thinning and spreading out of the liquid happened many minutes before the fall occurred or merely several seconds before the fall occurred. It is also equally probable that the spreading of the liquid was caused by the impact of [the plaintiff's] fall. Plaintiffs have pointed to no additional evidence to guide the jury, leaving them to 'conjecture, guess or suspicion.'").

8 – OPINION AND ORDER

the floor at all times, walked by or through the spill right before plaintiff did.[3]  Opp. 8-10.  Again, Oregon law is clear that an owner's duty to an invitee extends to dangers of which the "owner had actual *or constructive knowledge*," i.e., that "which he . . . in the exercise of reasonable care should have known."  *Moorehead*, 273 Or. App. at 68 (emphasis added).  As previously noted, the "foundation of liability" in a premises liability case is "knowledge—or what is deemed in law to be the same thing; *opportunity* by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury."  *Id.* at 69 (quoting *De Mars v. Heathman*, 132 Or. 609, 617-18 (1930)) (emphasis added).

The Oregon Supreme Court has not specifically considered whether constructive knowledge exists under circumstances such as those presented in this case, i.e., where a store employee comes upon, and leads the plaintiff to or through, the hazard that causes the plaintiff's injury.  Where no case law exists, this court must "interpret the law as would the [Oregon] Supreme Court."  *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010) (alteration in original).  That is, this court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises and restatements for guidance."  *Alliance for Prop. Rights & Fiscal Responsibility v. City of Id. Falls*, 742 F.3d 1100, 1102 (9th Cir. 2013).

Here, the store employee who was walking directly in front of plaintiff and leading her down the aisle admits that he would have seen the spill before plaintiff, but he does not recall whether he was looking for spills.  Culbert Dep. 36:18-22.  This is despite evidence that defendant expects its employees to perform safety sweeps at all times and look out for spills,

---

[3] Plaintiff appears to contend that this theory of constructive knowledge falls within both the second and third theories of recovery.  Opp. 8 (asserting "there is a genuine issue of material fact regarding the second and third theories of recovery").

9 – OPINION AND ORDER

including when they are taking a customer to find a product. Brier Dep. 33:8-16, 104:7-12; Culbert Dep. 42:14-43:10. In fact, defendant's "Slip, Trip and Fall Guidelines" indicate that employees are supposed to "[c]omplete safety sweeps on a regular basis to help keep the salesfloor free of slip and trip hazards," "[a]ll associates have a responsibility to conduct periodic safety sweeps," and "[s]afety sweeps need to be a natural part of the daily routine from start of the shift to close of the shift." Meyer Decl., Ex. 13, ECF 24. The company's "clean as you go" policy instills in employees that "throughout the day, not just certain hours, [they] are constantly being aware of [their] surroundings and cleaning up anything that [they] see." Brier Dep. 99:24-100:1-4. Thus, there is a question of fact regarding whether defendant had the "opportunity by the exercise of reasonable diligence to acquire knowledge" of the spill, considering the size and nature of the spill and other circumstances in existence, including that defendant's employee came upon the hazard that allegedly caused plaintiff's injury. *See Moorehead*, 273 Or. App. at 69.

    Defendant argues that because there is no evidence the substance was on the floor for some time, there is no liability. That argument, though, misunderstands the concept of constructive knowledge in the context of premises liability and overlooks that defendant's own employee came upon the hazard. True, there is no evidence here that the liquid hazard had dried or evaporated, *Zumbusch*, 940 F. Supp. 2d at 1315–16, there were tracks through the spill, *Murno v. Richard's Rood Center, Inc.*, 86 Or. App. 620, 623 (1987), or other facts suggesting the spill had been present for some time. But this case is different from ones where the mere existence of a hazard, without any other evidence, eliminated debate over whether the owner had a reasonable opportunity to discover the hazard. *See, e.g.*, *Laygui*, 2014 WL 3695536, at *3 (holding that existence of liquid laundry detergent on store floor, by itself, was not sufficient to

establish whether the hazard had existed for a reasonably sufficient time for employee to discover it).

The distinguishing characteristic here is that the defendant's employee came upon the hazard himself; in fact, there is evidence that the employee led plaintiff into or at least near to the puddle that caused her to slip. A reasonable juror could conclude based on plaintiff's testimony and the video and photographic evidence that the spill existed long enough for defendant to discover it because the employee himself came upon the hazard. Put another way, if liability depends, as Oregon law dictates, on the owner's "opportunity by the exercise of reasonable diligence" to discover the hazard and clear it or warn patrons about it, a reasonable juror could conclude there was such an opportunity here because there is evidence placing defendant's employee at the hazard before plaintiff slipped on it. *See Moorehead*, 273 Or. App. at 69.

Notably, in Oregon cases involving the "passage of time," there was no evidence placing an employee at the scene of the incident before the fall occurred. *See, e.g.*, *Dubry*, 70 Or. App. at 188-89 (granting summary judgment in defendant's favor where the only evidence regarding the opportunity to discover the hazard, a clump of leaves, was the condition of leaves). The lack of evidence regarding any change in the hazard's characteristics meant there was no basis for a juror to determine whether the hazard was present for "two seconds or two hours." *Id.* at 189. Here, while the video evidence placing the store employee at the spill site does not tend to prove the condition of the spill itself, it is evidence sufficient to draw a reasonable inference that the spill was "on the floor for a sufficient period of time that defendant, in the exercise of reasonable diligence should have discovered and removed" it. *Id.*

Defendant asserts that the lack of evidence regarding how long the spill was on the floor means it cannot possibly be held liable under Oregon law. But, as explained, plaintiff's

testimony regarding the size of the spill and its brown color against the white-tiled flooring is evidence tending to show the spill was on the floor long enough for the employee who was walking down the aisle in front of her to notice it. To the extent defendant's position is that the lack of evidence regarding the spill's condition should allow it to escape liability notwithstanding its employee's presence on the scene, that argument is not well taken. Not only would such a ruling be inconsistent with defendant's own "clean as you go" guidelines but, more importantly, interpreting Oregon law so narrowly would give stores a license to ignore spills that did not appear "old enough" and absolve store employees from the responsibility of cleaning up a spill even where the store employee comes upon it and should have, in the exercise of reasonable care, seen it. That is plainly at odds with Oregon law, which is clear that a storekeeper's duty includes the duty to "ascertain the condition of the premises and exercise reasonable care to protect its patrons from dangers foreseeable from the arrangement or use of the premises."[4] *Yanzick v. Tawney*, 44 Or. App. 59, 62 (1980) (citing *Mickel v. Haines Enterprises, Inc.*, 240 Or. 369 (1965); Restatement (Second of Torts s 343) (additional citations

---

[4] If, for example, a hypothetical employee was standing next to the clump of leaves and dirt that the plaintiff in *Dubry* slipped on, it strains credulity to suggest that there would still be insufficient evidence for a factfinder to conclude that the leaves were "on the floor for a sufficient period of time that defendant, in the exercise of reasonable diligence should have discovered and removed them." 70 Or. App. at 189. If the leaves were there, next to the hypothetical employee, a reasonable juror could conclude that the hypothetical employee present at the scene failed to exercise reasonable care in failing to pick them up. In that situation, evidence about the condition of the leaves would not be necessary, because regardless of how long the leaves were actually on the ground, whether two seconds or two hours, a juror could conclude that the hypothetical employee had the opportunity to clear the hazard and, in the exercise of reasonable care, should have done so.

omitted); *see also Starberg*, 169 Or at 373 ("[S]torekeepers are bound to use ordinary care to keep their premises in a reasonably safe condition[.]").[5]

In sum, plaintiff's proffered evidence, including the size and nature of the spill and that defendant's employee walked directly in front of plaintiff as he led her down the aisle and by or through the spill himself, is sufficient to create a question of fact as to whether "the foreign substance had been there for such a length of time that the [defendant] should, by the exercise of reasonable diligence, have discovered and removed it." *Cowden v. Earley*, 214 Or. 384, 387 (1958) (citations omitted). Defendant's motion for summary judgment is therefore denied.

---

[5] The decision in *Cressman v. Steak N Shake, Inc.*, a Northern District of Georgia case presenting similar circumstances, while not binding, is instructive. No. 1:18-CV-1806-MHC, 2019 WL 4804265 (N.D. Ga. Aug. 2, 2019). There, the plaintiff, a restaurant patron, was following the general manager to a table when she stepped on something and fell to the floor. A crayon was found near the area where the plaintiff fell. The general manager attested that he had looked at the floor as he escorted plaintiff to her table and observed no crayon, spills, or debris.

The district court found these facts "permit[] an inference of constructive knowledge." *Id.* at *6. This was "not a case where the undisputed evidence shows that an employee in the immediate vicinity was unable to see the hazard." *Id.* "Nor [was] this the case where plaintiff admitted that the hazard was difficult to detect." *Id.* Plaintiff "sustained her burden to produce evidence to show that Steak N Shake possessed constructive knowledge of the hazard." *Id.* There was a "disputed issue of material fact as to whether Steak N Shake had constructive knowledge of the crayon lying on the floor prior to [the plaintiff's] fall." *Id*.

Defendant argues that *Cressman* is distinguishable because Georgia law recognizes an "immediate vicinity" theory of constructive knowledge. In *Cressman*, the court observed that under Georgia law:

> Constructive knowledge may be shown by demonstrating that (1) an employee of the defendant was in the immediate vicinity of the fall and had an *opportunity* to correct the hazardous condition prior to the fall, or (2) the hazardous condition had existed for a sufficient length of time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises.

*Id.* at *5 (emphasis added). But Oregon premises liability law similarly recognizes that constructive knowledge is based on the "*opportunity* by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury." *Moorehead*, 273 Or. App. at 69 (citations omitted) (emphasis added).

13 – OPINION AND ORDER

**ORDER**

Defendant's Motion for Summary Judgment (ECF 15) is denied.

DATED June 22, 2022.

                                                          /s/ Youlee Yim You
                                          Youlee Yim You
                                          United States Magistrate Judge